

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-10-2007

# Globis Cap Partners v. Stonepath Grp Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-2560

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Globis Cap Partners v. Stonepath Grp Inc" (2007). *2007 Decisions*. Paper 795.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/795

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 06-2560

————————

GLOBIS CAPITAL PARTNERS, L.P., On Behalf of
Itself and All Others Similarly Situated; JUDI FRIEDMAN;
ANTONIO SOTTLE; ROBERT ENGER; JEFF FARR

v.

STONEPATH GROUP, INC.; DENNIS L. PELINO;
BOHN H. CRAIN; THOMAS L. SCULLY

Globis Capital Partners, L.P.,

Appellant

————————

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 04-cv-04515)
District Judge: Hon. Stewart Dalzell

————————

Submitted Pursuant to Third Circuit LAR 34.1(a)
June 4, 2007

BEFORE: SMITH and COWEN,
and SILER*, Circuit Judges

(Filed: July 10, 2007)

————————

*Honorable Eugene E. Siler, Jr., Senior United States Circuit Judge, U.S. Court of
Appeals for the Sixth Circuit, sitting by designation.

OPINION

COWEN, Circuit Judge.

Globis Capital Partners, LP ("Globis") appeals an order of the United States District Court for the Eastern District of Pennsylvania granting a motion to dismiss filed by Stonepath Group, Inc. ("Stonepath") and Stonepath executives Dennis L. Pelino, Bohn H. Crain, and Thomas L. Scully. For the reasons discussed below, we will affirm.

I.

Stonepath is a non-asset based third-party logistics services company. In 2001, Stonepath commenced a series of acquisitions through its two primary subsidiaries: Domestic Services and International Services. Among the companies acquired through Domestic Services was Air Plus. As part of this acquisition, Stonepath agreed to make a series of earn-out payments to Air Plus's shareholders if Air Plus met certain earning targets in subsequent years. Stonepath named the co-founder and majority shareholder of Air Plus, Gary A. Koch, CEO of Domestic Services. Domestic Services also had its own CFO and controller, and continued to use Air Plus's legacy information system. International Services – Stonepath's other major subsidiary – had separate officers and used a different legacy information system.

During the class period, Stonepath restated its financial results three times. The first restatement, which was announced in August 2003, related to allocating more value

2

to the customer relationship intangible assets for the company's acquisitions and revising the amortization method and life used for such assets. Second, in January 2004, Stonepath announced that it would restate its results for the last three quarters of fiscal year 2002 and the first three quarters of fiscal year 2003, because of an error in International Services' accounting process. Most simply, International Services' accounting figures mistakenly included transfers between International Services and one of its subsidiaries, which resulted in corresponding overstatements of revenues and costs. After this occurred, Stonepath executives stated that they were working with their internal and external auditors to ensure that such an error did not recur. However, in September 2004, Stonepath announced the need for a third restatement because Domestic Services had overstated its earnings by failing to adjust its transportation cost estimates to reflect its actual costs. This resulted in Domestic Services' overstating its income by a total of $16.3 million for 2001, 2002, 2003, and the first six months of 2004. On the day of this announcement, Stonepath's stock dropped from $1.59 per share to $0.86 per share.

Four days after the announcement, Globis filed a putative class action complaint seeking recovery under section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, and section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). Globis alleged that press releases and SEC filings discussing Stonepath's financial results were false and misleading, and sought relief on behalf of itself and all others who purchased Stonepath common stock from March 29, 2002, through September 20, 2004. After permitting

3

Globis to file a second amended complaint, the District Court granted appellees' motion to dismiss under Fed. R. Civ. P. 12(b)(6). Globis then appealed.

## II.

We have jurisdiction over this appeal by virtue of 28 U.S.C. § 1291. Our review of a district court's dismissal of a complaint under Fed. R. Civ. P. 12(b)(6) is plenary. *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004). A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if, accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom, there is no reasonable reading upon which the plaintiff may be entitled to relief. *Id.*

## III.

Globis argues that the District Court erred in dismissing its securities fraud complaint. The gravamen of the complaint is the section 10(b) claim, which is enforced through Rule 10b-5. *See In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 535 (3d Cir. 1999). In order to state a claim under section 10(b) and Rule 10b-5, a plaintiff must plead that the defendant "(1) made a misstatement or an omission of a material fact (2) with scienter (3) in connection with the purchase or the sale of a security (4) upon which the plaintiff reasonably relied and (5) that the plaintiff's reliance was the proximate cause of his or her injury." *In re Ikon Office Solutions, Inc.*, 277 F.3d 658, 666 (3d Cir. 2002).

The District Court dismissed Globis's complaint because it concluded that the complaint failed adequately to plead scienter. The Private Securities Litigation Reform Act (PSLRA) requires the complaint to "state with particularity facts giving rise to a

4

strong inference that the defendant acted with the required state of mind." 15 U.S.C. §

78u-4(b)(2). The complaint may present a "strong inference" of scienter, as relevant here,

"by alleging facts that constitute strong circumstantial evidence of . . . recklessness." *In*

*re Alpharma Inc. Sec. Litig.*, 372 F.3d 137, 148 (3d Cir. 2004). Recklessness involves

"not merely simple, or even inexcusable negligence, but an extreme departure from the

standards of ordinary care, and which presents a danger of misleading buyers or sellers

that is either known to the defendant or is so obvious that the actor must have been aware

of it." *Advanta*, 180 F.3d at 539 (internal quotation marks omitted). We employ a

demanding standard of recklessness to ensure that "the culpability attaching to such

reckless conduct closely approaches that which attaches to conscious deception." *In re*

*Digital Island Sec. Litig.*, 357 F.3d 322, 332 (3d Cir. 2004) (internal quotation marks

omitted).

Globis argues that it was reckless of Stonepath to rely on Domestic Services'

accounting reports. Generally, we will not "presume recklessness or intentional

misconduct from a parent corporation's reliance on its subsidiary's internal controls." *In*

*re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 554 (6th Cir. 1999); *see also Chill v. Gen.*

*Elec. Co.*, 101 F.3d 263, 271 (2d Cir. 1996) (same). Globis argues that this case departs

from that norm for three reasons. First, it argues that appellees were aware that Domestic

Services' internal controls were deficient because Stonepath had previously been forced

to restate its financial results. This argument, however, misses the mark. Globis does

not, and could not, argue that the first restatement notified appellees of widespread

5

internal-control problems. The second restatement – which Globis does rely on – concerned accounting problems at International Services, which used an entirely different accounting system than Domestic Services. The fact that one subsidiary failed to eliminate certain inter-company transactions from its ledger provided appellees no warning that a different subsidiary would improperly fail to alter its estimated transportation costs to capture actual costs.

Second, Globis contends that appellees were reckless in relying on Domestic Services' accounting because the CEO of Domestic Services, Koch, would be rewarded under the earn-out arrangement if Air Plus (an important component of Domestic Services) reached earning targets. According to Globis, Koch's interest imposed a heightened duty on appellees to monitor Domestic Services. However, Globis presents no caselaw recognizing this heightened duty, and it is inconsistent with the fact that executives commonly have financial interests in their companies. As we have explained in a similar context: "In every corporate transaction, the corporation and its officers have a desire to complete the transaction, and officers will usually reap financial benefits from a successful transaction. Such allegations alone cannot give rise to a 'strong inference' of fraudulent intent." *GSC Partners CDO Fund v. Washington*, 368 F.3d 228, 237 (3d Cir. 2004). Further, as the District Court recognized, Domestic Services had its own CFO and controller, and Stonepath was entitled to rely on those disinterested individuals to participate in managing the internal controls of Domestic Controls. Thus, the fact that Koch was interested in the earnings of Domestic Services does not demonstrate that

6

appellees were reckless in depending upon Domestic Services' accounting reports.

Finally, Globis argues that the scope of the error and the fact that it concerned Stonepath's most important source of earnings means that appellees were reckless in failing to catch it. However, the error in this case was relatively small: as the District Court determined, in a generous calculation, Domestic Services understated its transportation costs by only 5.7% in 2003 and less than 3.8% in 2002. Moreover, the earnings reported by Domestic Services were entirely in line with expectations. While there may be cases where the figures presented by a subsidiary are so startling that it would be reckless for the parent company to fail to investigate, this is not such a case. *Cf. Alpharma*, 372 F.3d 137, 151 (3d Cir. 2004) (explaining that spike in small subsidiary's revenue did not put company on notice that subsidiary engaged in fraud). Nor does the fact that the faulty report concerned Stonepath's core financial metric change this conclusion. As we stated above, recklessness requires "an extreme departure from the standards of ordinary care." *Advanta*, 180 F.3d at 539 (internal quotation marks omitted); *see also Chill*, 101 F.3d at 269 (explaining that "showing of recklessness must be such that it gives rise to a strong inference of fraudulent intent" (internal quotation marks omitted)). Globis does not claim that Stonepath's internal or external auditors alerted appellees to this accounting error, nor does Globis assert that appellees should have otherwise been aware that Domestic Services' internal controls were deficient. *See Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 829 (8th Cir. 2003) (finding it "telling" that company's "outside auditors did not question its accounting practices"). Thus, while

7

viewed in retrospect it may have been a poor decision for Stonepath to rely on Domestic

Services' accounting, "[r]ecklessness is not intended to encompass 'claims essentially

grounded on corporate mismanagement.'" *Digital Island*, 357 F.3d at 332 (quoting

*Advanta*, 180 F.3d at 540). Accordingly, we agree with the District Court that Globis has

failed to allege facts that constitute strong evidence of recklessness.[1]

Our conclusion is fortified by the fact that the three individual appellees were

acquiring substantial amounts of Stonepath stock throughout the period that they were

allegedly acting recklessly. As we explained in *Digital Island*, because appellees'

interests "were at all times tied to the value of their shares, we have no basis to infer the

sort of conscious disregard and deliberate ignorance required to plead scienter." 357 F.3d

at 332.

For the foregoing reasons,[2] the judgment of the District Court entered on April 4,

2006, will be affirmed.

---

[1] In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, the Supreme Court held that, under the PSLRA, "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." --- S.Ct. ----, 2007 WL 1773208, at *4 (2007). The Court's *Tellabs* decision removes any doubt that the PSLRA's scienter pleading requirement is a significant bar to litigation that Globis has failed to meet.

[2] Globis also brought a claim under section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). However, because Globis failed to plead a predicate violation of section 10(b) and Rule 10b-5, its section 20(a) claim must also be dismissed. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 211 (3d Cir. 2002)